1  Dale C. Campbell, State Bar No. 99173
   Charles L. Post, State Bar No. 160443
2  James Kachmar, State Bar No. 216781
   **weintraub** genshlea chediak
3  a law corporation
   400 Capitol Mall, 11th Floor
4  Sacramento, California 95814
   (916) 558-6000 – Main
5  (916) 446-1611 – Facsimile

6  Attorneys for Plaintiffs
   MV Transportation, Inc. and
7  MV Public Transportation, Inc.

8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12                                          CV 07     5712

13 MV TRANSPORTATION, INC., a California  ) Case No.
   corporation; and MV PUBLIC              )
14 TRANSPORTATION, a California            ) **MEMORANDUM OF POINTS AND**
   corporation,                            ) **AUTHORITIES IN SUPPORT OF**
15                                         ) **PLAINITFFS' EX PARTE APPLICATION**
              Plaintiffs,                  ) **FOR TEMPORARY RESTRAIING**
16                                         ) **ORDER AND ORDER TO SHOW CAUSE**
         vs.                               )
17                                         ) Date:
   JANET DAVIS; and DOES 1 through 20,     ) Time:
18 inclusive,                              ) Dept:
                                           )
19            Defendants.                  ) Complaint Filed:
                                           )
20 _____ )

21

22

23

24

25           Part 2 of 2

26

27

28

{12700/15923/CLP/0995085.DOC;}                              MPAs ISO Pls' Ex Parte
                                                            App. for TRO and OSC

# III. ARGUMENT

**A. The Court Should: (1) Issue A Temporary Restraining Order Prohibiting Davis From (a) Soliciting and (b) Using Or Disclosing MV's Trade Secret And/Or Proprietary Information In Violation Of Law And The Confidentiality Provisions Of Her Employment Agreement; and (2) Issue A Preliminary Injunction Prohibiting Those Acts And Davis' Continued Employment With Veolia Transportation And Any Further Violation Of The Non-Competition Agreement Plaintiff Is Entitled To Injunctive Relief.**

MV Transportation has divided its request for injunctive relief into two parts. First, it asks this Court to temporarily restrain Davis from (a) any further solicitation of MV employees as prohibited in §1.02.3 of the Non-Competition Agreement attachment to the Share Purchase Agreement and (b) any use or disclosure of MV's trade secret and/or proprietary information as prohibited by her Employment Agreement. Second, MV asks this Court to issue an order to show cause why a preliminary injunction should not issue prohibiting her from the acts covered by the temporary restraining order and to enjoin or prohibit her from any further employment with Veolia or any other competitor of MV in violation of §1.02.01 of the non-competition agreement. MV separates the relief it seeks in this regard into two sections because it recognizes the seriousness of what it is asking this Court to do.

By seeking to enjoin Davis' continued employment with Veolia by application for preliminary injunction, MV intends to provide the parties time to fully brief this issue and time for the Court to fully consider it. That said, however, MV faces immediate irreparable harm from Davis' continued violation of the non-competition agreement that was part in parcel of Local Motion's sale of goodwill to MV. MV asks this Court to set the earliest possible hearing date for the preliminary injunction application.

To obtain injunctive relief in the Ninth Circuit, "the movant must demonstrate either: (1) a combination of probably success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised as to the merits and that the balance of hardships tips in its favor." Dept. of Parks and Recreation for the State of California v. Bazaar del Mundo, 448 F.3d 1118, 1123 (9th Cir. 2006). These two tests represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Id., (quoting Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987)).

The availability of preliminary injunctive relief, because of its significant substantive importance, is determined by state law. Kaiser Trading Co. v. Associated Metals & Minerals Corp., 321 F.Supp. 923, 931 n. 14 (N.D.Cal.1970), *appeal dismissed*, 443 F.2d 1364 (9th Cir.1971). Under California Law, injunctions issue when defendants violate a non-competition agreement where the agreement supports the sale of the goodwill of a business. Brown v. Kling (1894) 101 Cal. 295, 302; Bramwell v. Airport Blue Print Company, 154 Cal.App.2d 57 (1957). In Harvey v. White, 213 Cal.App.2d 275 (1963), buyers of a business brought suit against the sellers who had opened a competing business for a breach of a covenant not to compete. The Court held that if the trial court makes a finding that a covenant not to compete is violated in this context, the Plaintiffs were "**entitled** to the injunction they sued for . . . ". Emphasis added; Id. at 281-282.

### 1. Plaintiff Will Prevail On The Merits Of Its Claims.

The first half of the 'interrelated' standard for grant of a temporary restraining order is a probability of success on the merits. Hunt v. Superior Court, 21 Cal.4th 984, 999 (1999). MV can establish a reasonable probability of success on the merits of this claim because: Davis has breached and has threatened continued breaches (a) of the non-solicitation provision of the attachment to the Share Purchase Agreement; (b) Davis' new employer Veolia has indicated that Davis will utilize MV's trade secret and/or proprietary information to benefit Veolia in violation of Davis' confidentiality commitment; and (c) Davis' employment with Veolia violates the non-competition agreement.

### a. Davis Has Solicited And Has Stated She Will Continue To Solicit MV Employees In Violation Of The Share Purchase Agreement.

Davis has breached the non-solicit provisions of the Share Purchase Agreement by soliciting MV employees to join her at Veolia. In the Non-Competition Agreement Davis promised not to "attempt to induce any employee of MV to leave such employment." §1.02.3, Monson Decl., Exh. B. However, Davis admitted to MV employees that she induced an employee of MV to leave his employment at MV to join her at Veolia. Specifically, Davis induced Christopher Bryan, an employee of MV and Local Motion since 1995, to resign his position at

MV. Moore Decl., ¶15. Davis also told MV executives that "I believe you will lose eight people in the future." Moore Decl., ¶15.

Here, it is beyond dispute that Davis is in violation of the non-solicitation provisions. Under section 16601 of the Business & Professions Code, Davis' breach of these agreements entitles MV to the issuance of an injunction to protect the value of the property it acquired from Davis. Monogram Industries, Inc. v. Sar Industries, Inc. 64 Cal.App.3d 692, 701 (1976).

### b. Davis is in Breach of The Non-Solicitation Agreement By Her Solicitation of Christopher Bryan to Join Her at Veolia.

Generally, an agreement by an employee not to interfere with or solicit former coworkers are valid under California Business & Professions Code §16600. Loral Corp. v. Moyes, 174 Cal.App.3d 268 (1985). The rationale is that an "anti raiding" provision is no more a significant restraint on engaging in an employee's profession, trade, or business than a restraint on the solicitation of customers or the disclosure of the employer's confidential information. Id.

Davis expressly covenanted to refrain from soliciting MV employees to join her at a competing business by agreeing not to directly or indirectly "attempt to induce any employee of MV to leave such employment." (§1.02.3, Exh. B to Monson Decl.) However, Davis breached this provision by her solicitation and taking of Bryan to Veolia with her. In fact, Davis breached the non solicitation provision of the non competition agreement while still employed at MV. Davis negotiated a "package deal" with Veolia for both Bryan and herself. Moore Decl., ¶15.

Davis' improper solicitation of Christopher Bryan has the potential of causing devastating harm to MV. Bryan spent approximately three months installing and servicing the MV paratransit software and applications for Access Services, a provider of paratransit services in Cincinnati, Ohio. Lyon Decl., ¶3; Hockman Decl., ¶3. In fact, Bryan was the "point man" on that project. Lyon Decl., ¶8. MV's contract with access services expires at the end of February 2008. Hockman Decl., ¶4. Currently, both MV and Veolia are bidding on the contract.

Davis cannot be allowed to solicit Bryan and potentially other employees like him in violation of the express non-solicitation provision of the non-competition agreement. Accordingly, immediate relief from the Court is needed to stop Davis' unlawful raid of MV

employees.

      **c.  Statements by Veolia to MV Clients Show that Veolia and Davis Plan to Utilize her Knowledge of MV's Trade Secret and/or Proprietary Information to Compete Against MV.**

Paragraph 6.1 of Davis' employment agreement, as amended, prohibits Davis from using or disclosing any of MV's trade secret and/or proprietary information for the benefit of any person or entity other than MV. Monson Decl., Exh. B. Employment restrictions that serve to protect a former employer's confidential information are valid under California Law. Latona v. Aetna U.S. Healthcare Inc., 82 F.Supp.2d 1089 (C. D. 1999) citing Muggill v. Reuben H. Donnelley Corp., 62 Cal.2d 239 (1965). Requiring an employee to sign an agreement not to disclose confidential information of the employer or solicit customers dealing with employer is enforceable under California Law. Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1339 (9th Cir. 1980) citing Gordon v. Landau, 49 Cal.2d 690, 694 (1958) - confidentiality agreement held valid and enforceable.

Statements by representatives of Veolia at a pre-bid session held by a current MV customer plainly reveal Veolia's and Davis' intent to utilize her knowledge of MV's know-how, customer information, solutions and proprietary software functionality and applications against MV. Lyon Decl., ¶6; Hockman Decl., ¶5. As of this writing, MV understands that Davis has been employed by Veolia for approximately two weeks and her use and disclosure of MV's proprietary information is ongoing. Any use or continued use of MV's proprietary information, know-how and trade secrets should be immediately temporarily restrained by this Court pending hearing of MV's application for issuance of a preliminary injunction.

      **d.  The Non-Competition Agreement Signed By Davis Is Enforceable Because It Supported The Sale Of Goodwill.**

California has a strong tradition of enforcing covenants not to compete when they support the sale of the goodwill of a business. Brown, supra, at 295; Streeter v. Rush, 25 Cal. 67, 72 (1864). This tradition has been codified at section 16601 of the California Business and Professions Code ("§ 16601") which states that covenants not to compete are enforceable where a person sells the goodwill of a business and, as part of the sale agrees with the buyer to refrain from

carrying on a similar business. This policy has been specifically upheld by courts when a covenant not to compete supports the sale of the goodwill of a business. Laird v. Steinman, 97 Cal.App.2d 781 (2d Dist. 1950). California recognizes and enforces covenants not to compete to protect buyers from unfair competition by the selling parties that receive value for the goodwill of a business then compete with the buyer in violation of the agreement. Vacco Industries, Inc. v. Van Den Berg, 5 Cal.App.4th 34 (1992).

When a party purchases a business and its operative components, it is presumed that the goodwill of the business transferred to the purchasing party. Handyspot Co. of Northern Cal. v. Buegeleisen, 128 Cal.App.2d 191, 194 (1954). Goodwill is defined by statute as "the expectation of continued public patronage." Bus. & Prof. §14100. Goodwill is "property of an intangible nature and is a thing of value." Hill Medical Corp. v. Wycoff, 86 Cal.App.4th 895, 902 (2001). The Court of Appeals has defined "goodwill" as

> ...the advantage or benefit which is acquired that is beyond the mere value of the capital, stock, funds or property held in the company. In re Marriage of Foster, 42 Cal.App.3d 577, 582 (1974); Ex parte Lyons, 27 Cal.App.2d 293, 297-298 (1938).

In this matter, Davis, along with the other sellers, sold the controlling shares of Local Motion to MV for valuable consideration as evidenced by the Share Purchase Agreement. Moreover, where all the operative components of a business are sold, an inference arises the sale includes the goodwill of the company. Handyspot Co. of Northern Cal., supra, at 194; *see also* Mahlstedt v. Fugit, 79 Cal.App.2d 562, 566 (1947). Here, MV purchased all of Local Motion's physical assets including the building where Local Motion's business was conducted, the name "Local Motion" and obtained complete control over all of Local Motion's employees, prospects, capabilities and plans. After the sale, MV had complete control of Local Motion. All of Local Motion's "operative components" were transferred to, and/or were subject to MV's control.

The sale of Local Motion's goodwill to MV is expressly documented in the Share Purchase Agreement. Davis executed the Share Purchase Agreement and expressly promised to use her "best efforts to preserve the good will of all persons having business relations with" MV. Section 5.1 (a) of the Share Purchase Agreement, Monson Decl., Exh. 1. MV acquired Local Motion specifically to acquire the goodwill of Local Motion in order to advance its resume to obtain skills

and capabilities in the Transit Software Business. The existence of the non-competition agreement itself demonstrates that the sale of the company included the sale of the goodwill. Id.; Streeter v. Rush, 25 Cal. 67, 72 (1864).

In this case, the Share Purchase Agreement confirms that the sale of Local Motion to MV included the sale of its goodwill. As stated before, Davis expressly promised at Section 5.1 (a) of the Share Purchase Agreement to use her best efforts to "preserve the goodwill of all persons having business relations with" MV. As shown by section 2.1 of the Share Purchase Agreement, MV purchased 80% of the issued and outstanding shares of the company giving MV complete control over Local Motion. Section 2.3 shows that MV paid the individual sellers, including Davis, $100,000 additional consideration for the transfer of that good will, and their commitment not to complete. Section 2.6 shows that MV took control and became liable for Local Motion's normal trade liabilities and payroll.

The Share Purchase Agreement also shows that MV took control of all intellectual property owned by Local Motion, all corporate matters, all liabilities and encumbrances, all environmental liability and all property owned by Local Motion. Monson Decl., Exh. 1. The Share Purchase Agreement states that MV took control over all the "operative components" that make up goodwill. In re Marriage of Foster, supra at 582; Ex parte Lyons, supra. Davis (and the other shareholders') sale to MV was a sale of the goodwill of a business and therefore a transaction encompassed within §16601 of the Business & Professions Code. Accordingly, Davis is bound by the non-competition agreement.

    e.    **The Non-Competition Agreement Is Reasonable In Scope.**

Section 16601 provides that a covenant not to compete is enforceable if it indicates "a specified geographic area in which the business so sold, or that of the business entity, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or ownership interest from the buyer, carries on a like business therein."

The Court in Monogram, supra, upheld a covenant not to compete with almost identical terms to the one at bar; a duration of five years covering the entire United States. The *Monogram* Court interpreted the above referenced portion of 16601 as not limited to the area where sales were

made in the past. Instead, the Court held that the area protected by the covenant not to compete was as broad as the area where the goodwill of the business had been established, regardless of past sales or customer base. Id. at 702. The Court noted: " The territorial limits are coextensive with the entire area in which the parties conducted all phases of their business including production, promotional and marketing activities as well as sales." Id. at 702. The Court affirmed the issuance of an injunction that protected the interest contemplated by the parties at the time the covenant was agreed upon and written.

In *Vacco, supra*, the Court upheld a five year non-compete agreement spanning the United States. Id. at 43. Relying on *Monogram*, the *Vacco* court held that "In order to protect the buyer from that type of 'unfair' competition, a covenant not to compete will be enforced to the extent that it is reasonable and necessary in terms of time, activity and territory to protect the buyer's interest." *Vacco, supra*, at 49. Similarly, the Court of Appeals in Fleming v. Ray-Suzuki, Inc., 225 Cal.App.3d 574 (1990) enforced an agreement not to compete that was national in scope. A covenant with an even broader territorial limit, encompassing the United States, Puerto Rico, the Virgin Islands, and Canada, was upheld in *Monogram*." Id. at 584.

Under §16601 and the cases interpreting its meaning, the non-competition agreement executed by Davis is reasonable in its scope. Like the covenant in Monogram and Vacco, the non competition agreement is in force for a period of 5 years. Monson Decl., Exh. B. Like the covenant in *Monogram and Fleming*, the non competition agreement is national in its scope.[2] This covenant is reasonable in light of the fact that MV is engaged in business all over the United States. Because of the nature of its business, Local Motion's potential customer base was *at least* national in scope.

2.  **Davis Is In Breach Of The Non Competition Agreement.**

In *Monogram Industries, Supra*, the Court affirmed the trial court's granting of a preliminary injunction enforcing a covenant not to compete and negative provisions of a

---

[2]   Specifically, the non-competition agreement states that the covenant covers "anywhere in all the cities, counties and states within the United States in which Purchaser, Company or any of their subsidiaries, successor or affiliates do or market business."

consulting agreement that supported the sale of business by a former executive vice-president and former owner of the purchased company. In Monogram, a former vice president, in connection with a sale of a business to the Plaintiff, agreed that he would not become involved in any business activity within the United States, Puerto Rico, the Virgin Islands and Canada which is "directly competitive with any aspect of the business of Company as presently conducted, and as said business may evolve" for a period of five years. The former vice president then accepted a position with the defendant company that was a direct competitor of the Plaintiff and thus in violation of the covenant not to compete and the negative provisions of the agreement between the parties. The Court of Appeals affirmed the trial court's granting of a preliminary injunction enforcing the covenant not to compete and enjoining the former vice president from taking the new position relying on Business and Professions Code section 16601.

The same conclusion must be reached here. Davis breached the non-competition agreement with MV. Davis is currently the "Vice President of Business Improvement" for Veolia, a direct competitor of MV. Davis has no choice but to utilize Local Motion's goodwill and utilize other proprietary information in executing her duties for Veolia. Davis has told employees of MV that her new position at Veolia is substantially the same position as her position at MV. Kimble Decl., ¶9. Further, Veolia is also in the business of paratransit services and is a direct competitor of MV. Kimble Decl., ¶10. Like the former vice president in Monogram, Davis is in breach of the non-competition agreement she executed and for which she received additional compensation.

3.   **The Balance of the Hardships Falls Squarely in Favor of MV.**

When deciding a motion for preliminary injunction, the second factor the court must consider is whether the Plaintiff will suffer greater injury from the denial of the injunction than a defendant is likely to suffer if it is granted. Shoemaker v. County of Los Angeles, 37 Cal. App. 4th 618, 633 (1995). In this case, those equities weigh heavily in Plaintiff's favor.

   a.   **MV Will Be Irreparably Harmed If The Court Does Not Issue A Temporary Restraining Order And Preliminary Injunction Enjoining Davis From Violating The Non Competition Agreement.**

"Irreparable injury" is harm that cannot be fully compensated by money damages. Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd., 23 Cal.App.4th 1459, 1471

(1994). When the goodwill of a business is sold, allowing the seller to turn around and compete with his former business erodes the very goodwill just sold. Strategix, Ltd., v. Infocrossing West, Inc., 142 Cal.App.4th 1068, 1073 (2006); citing Monogram Industries, Inc., supra, at 698. To not enforce a covenant not to compete under §16601, allows the seller to unfairly deprive the buyer of the full value of its acquisition, including its goodwill. Id.

### i. MV Will Not Receive The Benefit Of The Protections Granted In The Share Purchase Agreement And The Non-Competition Agreement If The Court Does Not Grant Injunctive Relief

The purpose of a non-competition agreement supporting the sale of goodwill is to prevent the type of conduct that can be harmful to the goodwill transferred. Monogram Industries, Inc., supra, at 703. As the court in *Monogram* stated, "Basic to the decision is the recognition that the individual being restrained is a highly skilled, creative manager whose untrammeled competition could do great harm." Id. Enforceability of these covenants rests on a notion, often unarticulated, of preventing 'unfair' competition. Id. at 698.

MV will be denied the benefits and protections it purchased in the Share Purchase Agreement if Davis is not enjoined from joining one of MV's major competitors to take on the same "role" she performed at MV. Davis' violation of the non-competition agreement unlawfully interferes with MV's contractual right to utilize the goodwill of the business she sold. By leaving MV to join a competitor, Davis takes with her the experience, expertise and goodwill sold to MV which MV has further developed and expanded. For Davis to now give that experience to a direct competitor, in violation of the Non-Competition Agreement, cannot be adequately compensated or quantified by damages. The only way to protect the assets MV purchased is to enjoin Davis from breaching the non-competition agreement.

### ii. MV is Irreparably Damaged By Davis' Unlawful Solicitation Of Local Motion Employees.

The court in Strategix, Ltd., supra, held that injunctions were proper to prohibit the seller of a business from soliciting employees of the sold business. The court's holding was based on the fact that allowing the seller of the business to solicit the sold business' employees erodes "the very goodwill it sold, while allowing the seller otherwise to pursue its chosen business with

whatever employees it can attract." Id. at 703.

Davis covenanted not to solicit employees of Local Motion and MV for a period of five years. However, Davis has taken with her to Veolia, as part of a "package deal", a MV Employee, Christopher Bryan. Moore Decl., ¶15. Furthermore, MV has learned that other employees of MV may be in the process of leaving MV to join Davis at Veolia. Moore Decl., ¶15. There can be no doubt that before leaving her position at MV Davis solicited MV's employees to join her in violation of the express provisions of the non competition agreement. There is no telling how many employees Davis intends to take to Veolia. If not enjoined, Davis and Veolia will likely continue to poach Plaintiff's valuable employees and proprietary information they possess. Bryan has already announced his intention to leave MV to join Veolia and more may follow. As such, MV requires immediate relief from this court to put a halt to Davis' unlawful solicitation and raiding of MV's employees.

### b. The Parties Recognized the Intangible Value Of Goodwill And The Irreparable Harm MV Would Suffer If Davis Violated The Non-Competition Agreement.

The covenanting parties expressly acknowledged in the Non-Competition Agreement that Plaintiff would sustain irreparable damage as a result of Davis' breach. The parties agreed that in the event of a breach, MV would be <u>entitled</u> to injunctive relief to prevent the irreparable harm. Specifically, Article II of the non-competition agreement states:

> In the event of breach of this covenant set forth in this instrument, shareholders hereby acknowledge and stipulate that purchaser and company will suffer irreparable damage for any such breach, that any remedy at law for any such breach of this covenant would be inadequate in that the purchaser or the company would be entitled to both (a) a preliminary or permanent injunction to prevent the continuation of such breach, and (b) monetary damages insofar as they can be determined. Nothing contained herein shall be construed to prohibit either the purchaser or the company from also pursing any other remedy, the parties having agreed that all remedies shall be cumulative.

### 4.  Davis Will Not Suffer Harm If The Temporary Restraining Order And Preliminary Injunction Are Granted.

In <u>Monogram Industries, Inc., supra</u>, the Court affirmed the trial court's granting of a preliminary injunction enjoining the former vice president and former owner of a business from joining a competitor in violation of a covenant not to compete. In doing so, the Court affirmed the trial court's determination that the former executive's right to work elsewhere did not outweigh

the Plaintiff's right to enforce the covenant not to compete and enjoy the benefit of the bargain reached in the sale of the business.

The same reasoning applies here. The requested injunction will only prohibit Davis from accepting an identical position with a direct competitor of MV. This does not restrict Davis' ability to seek employment in the software design industry per se and in fact Davis has received job offers from other software design employers, including Google. Davis did not accept the Google offer because the other half of the package deal, Bryan, refused to go. Klika Decl., at ¶2. Here, Davis is only prohibited from violating an agreement she executed, was given additional consideration for, and was reasonably narrow solely to prevent the type of competition Davis now seeks to engage in. As such, prohibiting Davis from breaching a non-competition agreement does not cause her actual harm. It is what she agreed to.

Additionally, enjoining Davis in this case will not harm her greater than the harm MV will suffer if her breaches are allowed to continue. First, Davis' current employer, Veolia, has agreed to defend and indemnify her for costs incurred as a result of her breaches, <u>including</u> judgment. Monson Decl., Exh. I, p. 4 at ¶3(g). Under that arrangement, Veolia has agreed to protect Davis from the consequences of breach of the non-competition agreement. <u>Id</u>. Thus, there is every likelihood that Veolia will pay Davis a salary even if she is enjoined from working for and providing services to Veolia. Second, following Davis' resignation from MV, MV's president Jon Monson wrote to Davis, extending her a still open offer of employment. MV stands by that offer and will employ her promptly upon her resignation from Veolia. Thus, the actual hardship Davis will suffer if she is preliminarily enjoined from continued employment with Veolia, is far less than the harm MV will suffer if her violations of the non-compete are not restrained.

## IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully request that this Court grant this application and issue a preliminary injunction in the form filed concurrently herewith.

Dated: November 9, 2007

**weintraub** genshlea chediak
a law corporation

By: _____
Charles L. Post
State Bar No. 160443

Attorneys for Plaintiffs
MV Transportation, Inc. and
MV Public Transportation, Inc.