Dale C. Campbell, State Bar No. 99173
Charles L. Post, State Bar No. 160443
James Kachmar, State Bar No. 216781
**weintraub** genshlea chediak
a law corporation
400 Capitol Mall, 11th Floor
Sacramento, California  95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

Attorneys for Plaintiffs
MV Transportation, Inc. and
MV Public Transportation, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MV TRANSPORTATION, INC., a California corporation; and MV PUBLIC TRANSPORTATION, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>JANET DAVIS; and DOES 1 through 20, inclusive,<br><br>Defendants, | Case No.<br><br>DECLARATION OF BODIE LYON IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE<br><br>Date:<br>Time:<br>Dept:<br><br>Complaint Filed: |

I, Bodie Lyon, declare:

1. I am the Regional Vice President for the Central Region of MV Transportation, Inc., a corporation organized and existing under the laws of the State of California ("MV"), a plaintiff in this action. I make this declaration of my own personal knowledge except as to matters stated herein on my information and belief and, as to those matters, I believe them to be true and correct. If called as a witness, I could and would competently testify to the matters contained herein.

2. I have been the Regional Vice President for the Central Region of MV for approximately two and a half years. As Regional Vice President I oversee the general managers in the central region. My duties include overseeing the various contracts we have within the central region.

3. On or about October 12, 2007, I attended a pre-bid meeting at Access Services. Access Services runs the ADA paratransit services operated by the Southwest Ohio Regional Transit Authority located generally in the Cincinnati area. MV has had a contract with Access Services since approximately 2002 to provide paratransit services to the City of Cincinnati. The Paratransit Director for Access Services is Mary Moning. I have come to know Ms. Moning during the past two years and have worked with her many times.

4. The purpose of the pre-bid meeting was to allow all potential bidders an opportunity to observe Access Services' facilities and operation and ask Access Services questions about its current system to assist bidders in preparing a responsive bid.

5. During the pre-bid meeting, Ms. Moning pointed out the monitors that display automated scheduling and dispatch information. Access Services' automated scheduling and dispatch system utilized software sold by a third party vendor known as Trapeze. MV has developed its own proprietary software that integrates with Trapeze to greatly enhance the functionality of the scheduling and dispatch system. MV's proprietary computer software also generates customized reports that provide the user with enhanced report capabilities to analyze and improve performance.

6. Ms. Moning advised the prebid attendees that what the attendees saw as the monitors was MV's proprietary software. Ms. Moning also generally described how MV's customized applications prepare unique reports that were only capable of being generated with the MV software. Ms. Moning stated that the prospective bidders would have to match MV's technology. At that point, a person who identified himself as being from Veolia, a direct competitor of MV, told Ms. Moning that she didn't have to worry because Veolia had that "covered."

7. After the meeting, Ms. Moning approached me and told me that the person

from Veolia had just informed her that Veolia had hired MV's employees Janet Davis and Christopher Bryan. I felt this was a serious situation because Ms. Davis, and especially Mr. Bryan, had worked closely with Ms. Moning. Mr. Bryan was MV's primary technology contact with Access Services, installed and serviced MV's proprietary software applications for Access Services. I immediately called John Monson, MV's chief executive officer to confirm if this information was correct. Mr. Monson confirmed what Ms. Moning had told me.

8. Ms. Moning and myself then went into Ms. Moning's office to discuss the situation. While in Ms. Moning's office, Christopher Bryan called Ms. Moning to let her know that he had left MV to join Veolia. Mr. Bryan had been the point of contact on the Access Services technology project. Mr. Bryan spent approximately three months installing MV's proprietary software applications to interface with the off-the-shelf Trapeze software to support Access Services' paratransit services.

9. MV's proprietary custom applications are instrumental for Access Services to ensure efficient arrival, departure, and on-time performance of their services. MV's custom applications also provide management tools to improve service and performance. For example, the one such proprietary custom application noted by Ms. Moning during the pre-bid meeting generates management reports known as "spider reports" which show on-time arrivals and run times.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2007, at Louisville, Kentucky.

_____
Bodie Lyon

{12700/16121/DCC/0994387.DOC;}    3    Decl. of Bodie Lyon ISO Temporary Restraining Order & Prelim. Injunction