1  L. Eric Dowell, Arizona SBN 011458
2  Alec Hillbo, Arizona SBN 020185
   OGLETREE, DEAKINS, NASH,
3  SMOAK & STEWART, P.C., SBN 00504800
   2415 East Camelback Road, Suite 800
4  Phoenix, Arizona 85016
5  Telephone:  (602) 778-3700
   Fax:  (602) 778-3750
6  eric.dowell@OgletreeDeakins.com
   alec.hillbo@OgletreeDeakins.com
7

8  Linda Claxton, California SBN 125729
   David A. Garcia, California SBN 218356
9  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C., SBN 00504800
10 633 West 5th Street, 53rd Floor
11 Los Angeles, California  90071
   Telephone:  (213) 239-9800
12 Fax:  (213) 239-9045
13 linda.claxton@ogletreedeakins.com
   david.garcia@ogletreedeakins.com
14

15 Attorneys for Defendant Janet Davis

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18               SAN FRANCISCO DIVISION

19 | MV TRANSPORTATION, INC., | No.  CV-07-5712 (PJH)
20 | a California corporation; and MV PUBLIC
   | TRANSPORTATION, INC., a California | **MOTION    TO    DISMISS    OR**
21 | corporation, | **TRANSFER    FOR    IMPROPER**
   |                          Plaintiff, | **VENUE**
22 |
   |     vs. |                      **OR**
23 |
24 | JANET DAVIS; and DOES 1 through 20, | **OPPOSITION   TO   MOTION   FOR**
   | inclusive, | **TEMPORARY          RESTRAINING**
25 |                          Defendant. | **ORDER**
26 |

27 ///

28 ///

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 778-3700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

**Summary of Argument**

The Court should dismiss this action for improper venue and order transfer to the District of Arizona.  The plaintiffs sued Janet Davis ("Davis") and seek injunctive relief under an Employment Agreement that contains a valid forum selection clause.  Plaintiffs have failed to sue in the proper forum and the Court should transfer this matter to the proper venue.

Even if venue were proper in the Northern District of California, plaintiffs hinge their request for a temporary restraining order on an overbroad non-solicitation covenant that followed plaintiff MV Transportation's ("MV") partial purchase of Davis's business.  Under California law, a non-solicit is valid (1) when the seller transfers all of her ownership to the purchaser or (2) when it extends to the customers and employees of the *seller's* business.  A covenant, however, is invalid if full ownership is not transferred or if the non-solicit extends to the *purchaser's* customers and employees, *as is the case at bar*.

Moreover, plaintiffs' entire request for injunctive relief is premised on three erroneous and insubstantial allegations that Davis:  (1) solicited an MV employee to leave MV; (2) expressed an opinion that other employees might leave MV; and (3) knew and disclosed confidential and proprietary information about MV's business.   Even if all of these allegations were true (which they are not), they do not support the extraordinary relief of a TRO.

The Court should note that plaintiffs <u>have not</u> sought temporary injunctive relief with respect to the non-compete covenant in an obvious concession that plaintiffs do not believe the non-compete covenant is valid under California law.

**Background**

This dispute arises out of plaintiff MV's partial purchase of Local Motion, ITS ("LM") in December 2003.  Three agreements from that deal are at issue here:  (1) the Sale Purchase Agreement ("SPA"), (2) the Non-Competition Agreement, and (3) the

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

1    Employment Agreement. These three agreements stand-alone and are fully integrated.

2    (*See* Complaint, Exs. 1, 2, and 3).

3        Defendant Davis was one of four shareholders of LM. (Declaration of Davis at ¶

4    6). Before being purchased by MV, LM operated as a broker of transportation and

5    paratransit services, meaning LM sought to find business for transportation providers,

6    like plaintiffs. (Davis at ¶ 7).[1]  During the very short seven month time of its operation

7    before being partially acquired by MV, LM obtained only one customer, Carenet, a

8    Virginia-based company. (Davis at ¶ 8).

9        At the time of the partial acquisition, LM's business was very limited. It only had

10   five employees, including three shareholders and two other employees.  (Davis ¶ 9).

11   Carenet, LM's sole customer, generated gross revenue of approximately $413,000 per

12   year with net revenue of $20,000 to $25,000 per year. (Davis at ¶ 8).   At the time MV

13   partially purchased the business, LM had no other customers and had no anticipated

14   customers.[2] (Davis at ¶ 8). LM had no other business and was not in the business of

15   developing transportation software.   Indeed, LM had no intention of developing

16   transportation software.[3]  (Davis at ¶ 10).

17       In November 2003, MV negotiated with the four shareholders of LM to make a

18   partial purchase of LM. (Davis at ¶ 11).  LM had been in business for only seven months

19

20

21   [1] Plaintiff contends that MV and LM were engaged in the same business. (Plaintiffs' Memorandum in Support of
     Injunctive Relief, p. 4, ll. 12-14). This is not true. Plaintiffs say that LM was "providing the same line of services
22   in the paratransit and medical transportation fields." (Memo in Support, p. 2, ll., 22-23). This also is incorrect.
     LM was a broker in the transportation and paratransit business, not a provider of such services. (Davis ¶ 7).

23   [2] Plaintiffs claim that LM was "marketing its services nationwide and MV was operating nationwide." (Memo
24   in Support, p. 3). This is a gross exaggeration. LM had one customer at the time of purchase and had been in
     operation for only seven months. (Davis ¶ 8). LM had sent out, at best, one or two bids for work in the short time
25   of its existence before MV purchased 80% of the stock. *Id.* This can hardly be recognized as "marketing …
     nationwide."

26   [3] Plaintiffs claim that one of the purposes of acquiring LM was to allow LM to *continue* its "software application
27   services..." and "to use Local Motion to develop proprietary software and other information services
     programming…." (Memo in Support, p. 8, ll. 15-17). Yet, LM was never engaged in software application services.
28   (Davis at ¶ 10).

and ultimately had a short life as MV shut down LM's operations in 2005 – within approximately 18 months after partially acquiring LM. (Davis at ¶¶ 11, 12).

After the purchase, Davis started providing services for MV and LM as vice-president in charge of contracts and later as vice-president in charge of information technology. (Davis ¶ 15). Part of Davis's expertise is in paratransit services, which comprises the vast majority of MV's business.[4] (Davis at ¶¶ 3, 13).

In approximately July 2007, a former employee of MV, John Smolenski, recommended Davis and another MV employee, Christopher Bryan ("Bryan"), for employment with Veolia Transportation, Inc. ("Veolia"), a Chicago-based international transportation provider of rail, fixed route, and paratransit services.[5] (Davis ¶¶ 18, 21). Following Mr. Smolenski's referral, Davis was contacted directly by Veolia's CEO, Mark Joseph. (Davis ¶ 18). Davis started employment with Veolia on October 23, 2007 as a Vice-President of Business Improvement. (Davis at ¶ 21).

Plaintiffs allege that Davis solicited Christopher Bryan to leave MV's employ and accept employment with Veolia. The facts are, however, that Mr. Smolenski gave Davis's and Bryan's name to Veolia. (Davis at ¶ 18). Veolia, in turn, sought to hire both Davis and Bryan. (Davis at ¶¶ 18, 19). Davis did not induce Bryan to join Veolia, did not offer Bryan a job, and did not negotiate for him. (Davis at ¶ 20; Declaration of Christopher Bryan at ¶¶ 5, 6). Veolia independently researched the abilities of Davis and Bryan. (Davis ¶ 19; Bryan at ¶ 10). Bryan engaged in his own negotiations with Veolia.[6] (Bryan at ¶ 6). Contrary to repeated allegations, Davis and Bryan were not a package deal. (Davis at ¶ 20; Bryan at ¶ 9).

---

[4] Paratransit services refers to transportation for individuals with disabilities who cannot transport themselves. (Davis at ¶ 13).

[5] Plaintiffs claim that Veolia is a "direct competitor of MV in all of its markets." (Memo in Support, p. 10, ll. 8-9). This is incorrect. MV's principal business is paratransit services. Veolia operates worldwide and focuses primarily on rail and fixed transportation services. (Davis ¶ 21).

[6] Plaintiffs claim that Davis resigned one day before Bryan. (Memo in Support, p. 10, ll. 2-5). Bryan actually resigned before Davis. (Bryan ¶ 8).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

Contrary to plaintiffs' allegations, Davis never said she was taking eight people with her to Veolia. (Plaintiffs' Memorandum in Support of Injunctive Relief ("Memo in Support"), p. 10, ll. 10-14) Davis's comments were taken out of context. Davis left MV because she did not like the direction of the company. (Davis at ¶ 22). When Davis was leaving, she noted that others, like her, were unhappy with the direction of the company and that morale was low with respect to some employees – not because Davis and Veolia were recruiting anyone. (Davis at ¶ 22). Davis simply informed MV that if they did not address the deteriorating morale problem, other employees may leave MV. (Davis at ¶ 22).

Plaintiff also alleges that Davis disclosed plaintiffs' confidential information for the purpose of diverting business (the Access Services account) from plaintiffs to Veolia. Davis has not taken any of MV's confidential or proprietary information with her and she has not disclosed any such information to Veolia or any customers of plaintiffs. (Davis at ¶ 23). Davis has not solicited any customers of plaintiffs. (Davis at ¶ 23). Notably, Veolia decided not to bid the Access Services account. In any event, Veolia had its own ability to either develop the software independently or obtain it on the open market from Trapeze or a similar vendor. (Davis at ¶ 24).

As there was little income at Local Motion and only one client, the obvious conclusion is that the MV sought to purchase LM's employees' talents. Plaintiffs acknowledge this in their pleading: "the shareholders of LM had a history of experience in the transportation management software business." (Memo in Support, p. 5, ll. 20-21) ("MV's interest in acquiring the control and goodwill of Local Motion was based, in part, on the background, experience and technical skills … in the transportation software and developing and implementing transportation software services.").

Plaintiffs argue that Davis could have taken an opportunity with Google, suggesting Davis flaunted the non-compete. (Memo in Support, p. 13, ll. 2-14). Davis, however, never received an offer from Google. (Davis at ¶ 25).

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

I.    **Venue is Improper in this Judicial District and the Matter Should Be Dismissed or Transferred to the District of Arizona.**

A. **This Court Has the Discretion to Dismiss This Case Under Rule 12(b)(3) Due to Its Improper Venue.**

Federal courts sitting in diversity should apply federal law to determine the effect of a forum selection clause. *See Argueta v. Banco Mexicano, SA,* 87 F.3d 320, 324 (9th Cir. 1996). The Ninth Circuit has held that a motion to dismiss for lack of venue under Fed. R. Civ. P. 12(b)(3) is the proper vehicle for enforcement of a forum selection clause. *See Argueta,* 87 F.3d at 324 (holding that a Rule 12(b)(3) motion to dismiss for improper venue applied rather than a Rule 12(b)(6) motion to dismiss for failure to state a claim). In reaching its decision, the *Argueta* court noted that, unlike a Rule 12(b)(6) analysis, "[a]nalysis under Rule 12(b)(3) … permits the district court to consider facts outside the pleadings, and is consistent with the Supreme Court standard for resolving forum selection clause cases" – *i.e.*, the pleadings are not accepted as true. *Id.*

Once venue is challenged, the burden is on the plaintiff to show that venue is proper. *See Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000) ("although there is some disagreement, most courts hold that the plaintiff bears the burden of establishing proper venue"); *Koresko v Realnetworks, Inc.*, 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003) (same). In the event that venue is determined to be improper because a forum selection clause is given effect, the court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case if it be in the interests of justice, to any district or division in which it could have been brought. *See* 28 U.S.C. § 1406(a); *Flake v. Medline Industries, Inc.*, 882 F. Supp. 947, 950-51 (C.D. Cal. 1995).

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

**B.    The Parties Agreed that Only Courts in Tucson, Arizona Could Hear Any Requests for Injunctive Relief.**

Plaintiffs sued Davis under two completely integrated, stand-alone contracts – the Non-Competition Agreement (Complaint, Ex. 2) and the Employment Agreement (Complaint, Ex. 3).   Significantly, plaintiffs seek venue in this District based upon the forum selection clause found only in the SPA (Complaint, Ex. 1, ¶ 8.8), an agreement that is relevant to this matter but *is not the operative agreement or contract upon which MV bases its requests for relief.*   Instead, plaintiffs seek to enforce the purported non-solicitation and non-competition covenants in the Non-Competition Agreement (Complaint, Ex. 2) and the non-disclosure obligations in the Employment Agreement (Complaint, Ex. 3).

The Non-Competition Agreement contains *no* forum selection clause. (Complaint, Ex. 2).  The Non-Competition Agreement is a fully-integrated contract (*see* Section 3.05) and it does not integrate or otherwise incorporate the terms of the SPA. Accordingly, under well-settled principles of contract law, plaintiffs may not look to the SPA to add a new forum selection clause to the Non-Competition Agreement where none presently exists.  *See 250 L.L.C. v. Photopoint Corp. (USA)*, 131 Cal. App. 4th 703, 725 (2005) (where "the parties to a written contract have agreed to it as an 'integration' - a complete and final embodiment of the terms of an agreement - parol evidence cannot be used to add to or vary its terms").

Although the Non-Competition Agreement contains no forum selection clause, section 9 of the Employment Agreement does.  Section 9 requires the parties to arbitrate all employment-related disputes, but also allows the parties to bypass the arbitration procedures to obtain injunctive relief.  (Complaint, Ex. 3, Section 9)  However, should a party seek injunctive relief against the other, the parties agreed that "*the parties hereby consent to the jurisdiction of, and proper venue in, the federal and state courts located in Tucson, Arizona*."  *Id.* (emphasis added).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. 2415 EAST CAMELBACK ROAD, SUITE 800 PHOENIX, ARIZONA 85016 (602) 778-3700

7

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

1
2
3

Plaintiffs completely disregard this agreed-upon provision in seeking to enforce Davis's purported obligations under the Employment Agreement in this District.  This is something plaintiffs cannot do.

4
5
6
7
8
9
10
11
12

A court may dismiss an action when it is filed in violation of a valid forum selection clause. *Argueta,* 87 F.3d at 324 (affirming trial court's dismissal of a complaint not properly commenced pursuant to the forum selection clause because the plaintiff failed to show enforcement of the forum selection clause was unreasonable); *International Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 113-14 (5th Cir. 1996) (affirming dismissal by district court for improper venue; decision was based on the presence of a valid forum-selection clause).  Plaintiffs' request for injunctive relief should, therefore, be dismissed because plaintiffs have failed to file this matter in either the state or federal courts located in Tucson, Arizona.

13
14
15

**C.    Venue Also Is Improper in this District as a Substantial Part of the Events That Allegedly Gave Rise to this Litigation Occurred in Arizona.**

16
17
18
19
20

Even if a valid forum selection agreement between the parties did not exist, venue still would be improper in the Northern District of California.  Under Title 28 U.S.C. § 1391(a), venue in this case is only appropriate in: (1) the judicial district in which Davis, the sole defendant, resides (28 U.S.C. § 1391(a)(1)); or (2) the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred (28 U.S.C. § 1391(a)(2)).

21
22
23
24
25

Venue in this Court is improper under 28 U.S.C. § 1391(a)(1) because Davis resides in Arizona.  (Davis ¶ 2).  Davis has lived and worked in Arizona since 1995 and, when she worked for MV, she did so in Waddell, Arizona.  (Davis ¶ 2).  Even the Non-Competition Agreement reflects Davis's Arizona residency in the initial recitals. (Complaint Ex. 2, p. 1) ("resident of Arizona").

26
27
28

In determining whether venue is proper under 28 USC § 1391(a)(2), only those events and omissions that directly give rise to the claim are relevant.  *See Jenkins Brick*

8

*Co. v. Bremer,* 321 F.3d 1366, 1372-73 (11th Cir. 2003). Here, the events that allegedly give rise to plaintiffs' claim that Davis violated the Non-Competition Agreement all occurred in Arizona -- not in California. Specifically, plaintiffs assert that Davis breached the Non-Competition Agreement by accepting employment with Veolia. To support the allegation of a breach, plaintiffs rely on Davis's draft employment agreement with Veolia – a document which shows Davis will work for Veolia at her home office in Waddell, Arizona and a "principal office location" in Phoenix, Arizona. (Declaration of Jon Monson, Ex. I, ¶ 3(h))

Venue for this lawsuit, accordingly, is only appropriate in the Federal District Court of Arizona. *See Jenkins Brick,* 321 F.3d at 1372 (only venue appropriate in non-compete case was where expected performance and breach took place).

## II. In the Event this Court Does Not Dismiss or Transfer Venue of this Case, The Court Should Deny the Application for a Temporary Restraining Order.

Plaintiff seeks a TRO on two grounds: (1) Davis's alleged violation of the non-solicit provision in the Non-Competition Agreement;[7] and (2) Davis's alleged violations of the confidentiality provision/inevitable disclosure of knowledge obtained during Davis's employment with plaintiff. These arguments fail because:

- The non-solicit and non-compete covenants are legally unenforceable and Davis did not solicit or induce Christopher Bryan to leave MV and join Veolia; and

- The confidentiality covenants should not be used to restrict employment, the inevitable disclosure doctrine is not valid under California law, and plaintiffs offered no direct or indirect proof of a violation by Davis.

### A. Standard of Proof for a Temporary Restraining Order.

The standards for a temporary restraining order and for a preliminary injunction are substantially the same. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.,*

---

[7] Although plaintiffs do not seek a TRO with respect to the non-compete covenant, the analysis of the non-compete is virtually the same as the analysis of the non-solicit and, therefore, is presented here.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

*Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A party seeking injunctive relief may establish entitlement to such relief by showing: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) serious questions as to these matters and that the balance of hardships tips sharply in its favor. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987).

Because injunctive relief is an extraordinary remedy, courts require the movant to carry its burden of persuasion by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

**B. There is No Likelihood of Success on Plaintiffs' Claims.**

**1.     The Non-Solicit and Non-Compete Covenants Are Invalid.**

**a.    <u>The Non-Solicit and Non-Compete Covenants Are Unenforceable for Failure to Transfer All Stock as Required Under Section 16601.</u>**

California favors open competition. *See Hill Med. Corp. v. Wycoff*, 86 Cal. App. 4th 895, 900-901 (2001). This longstanding public policy is reflected in California Business and Professions Code Section 16600, which states that, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600 ("Section 16600").[8]

Contracts which restrain trade are void under Section 16600 unless they are specifically authorized by Business and Professions Code sections 16601 or 16602. *See Bosley Medical Group v. Abramson*, 161 Cal. App. 3d 284, 288 (1984). Although section 16601 allows restrictive covenants pursuant to the sale of a business, such a sale

---

[8] California courts routinely hold that non-solicitation agreements are illegal restraints of trade under Section 16600. *Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal. App. 4th 1068, 1072 (2006) (voiding both non-solicitation of customers and employees provisions); *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1427-1429 (2003) (voiding non-solicitation of customers provision). *See also Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1095 (C.D. Cal. 1999) ("non-solicitation agreements are subject to the restrictions of section 16600").

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

requires that the owner sell *all* of his or her shares of stock.  Section 16601 states, in pertinent part:

> Any person who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of <u>all of his shares in said corporation</u> . . . . may agree with the buyer to refrain from carrying on a similar business within a specified county or counties, city or cities, or a part thereof, in which the business so sold, or that of said corporation, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or shares from him, carries on a like business therein….

*Id.* (emphasis added).[9]

As plaintiffs concede, Davis did not sell all of her stock to MV.  (Memo in Support, p. 4 ll. 2-4).   When she entered into the Non-Competition Agreement, **Davis retained 7.5% of LM.**  (Davis ¶ 11).  Accordingly, Section 16601 is inapplicable and the Non-Competition Agreement is void under Section 16600.

### b.    The Lack of Transfer of Goodwill Further Voids the Non-Solicit and Non-Compete Covenants.

Moreover, plaintiffs offered no proof they provided any consideration for goodwill.  One California court refused to enforce a covenant not-to-compete where there was no allocation of compensation for goodwill. *See Hill Med. Corp. v. Wycoff*, 86 Cal. App. 4th 895, 904, 908 (Cal. App. 2001) ("simply selling shares" to a corporation "does not necessarily demonstrate that goodwill is part of the agreement.").   "[T]here

[9] When the predecessor to Section 16601 was first adopted (California Civil Code section 1674), the statute only addressed the sale of goodwill of a business and not a situation where a shareholder sells all of her shares to a company. *Radiant Industries, Inc. v. Skirvin*, 33 Cal. App. 3d 401, 403 (1973); *Merchants' Ad-Sign Co. v. Sterling*, 124 Cal. 429, 431 (1899).   Because of that, courts refused to apply the statute's general language regarding the "sale of goodwill" to situations where a shareholder sold shares of a company. *Radiant Industries, Inc.*, 33 Cal. App. 3d at 403.  Courts reasoned that "the sale of corporate stock would not support a covenant by the seller not to compete since a sale of the stock did not carry with it a transfer of the good will of the corporation." *Id.* Subsequently, in 1945 the California legislature amended the predecessor of Section 16601 to permit covenants not to compete for a stockholder, but only where a stockholder sold all of his or her corporate shares. *Id.* Subsequent case law after 1945 confirms that only when a stockholder sells <u>all of his or her corporate shares</u> may a company obtain an enforceable covenant restricting that individual's trade, business, or profession. *Id.* Accordingly, MV's simplistic attempt to apply Section 16601's general language regarding "sale of goodwill" to Davis ignores the express language of the statute and literally a century's worth of case law.

Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona  85016
(602) 778-3700

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

1   must be a clear indication that in the sales transaction, the parties valued or considered

2   goodwill as a component of the sales price." *Id.* at 903.

3         Assuming for the sake of argument that Davis had transferred 100% of her stock

4   to MV (which she did not), the non-solicit and non-compete covenants are unenforceable

5   for lack of consideration.   In this case, the Non-Competition Agreement does not

6   evidence that the parties considered the payment to Davis of $25,000.00 to be for the

7   goodwill that customers or clients attached personally to Davis' services to LM.[10]   (*See*

8   Complaint, Ex. 1 at ¶¶ 2.1, 2.2, 2.3).

9         Indeed, the SPA and Non-Competition Agreement are silent with respect to any

10  allocation of the money received by Davis (or the other three shareholders) in connection

11  with executing the Non-Competition Agreement or selling part of her shares to MV as

12  payment for her "goodwill." *Id.*   Instead, MV relies on out-of-context representations

13  contained in the SPA.   For this additional reason, the Non-Competition Agreement is

14  void under Section 16601.

15            **c.**     **The Non-Solicit and Non-Compete Covenants in the Non-Competition Agreement Are Overbroad and Unenforceable.**

16        Under California law, a covenant ancillary to the sale of a business may extend

17  only to the *seller's business, customers, and employees* – i.e., the "business so sold."

18  *Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal. App. 4th 1068, 1073 (2006).

19        *Strategix* controls this case.  There, the trial court entered an injunction against

20  the *seller of a business* from soliciting *the purchaser's employees or customers*. *Id.* at

21  1070-71.  Like here, the purchaser attempted to protect against the solicitation of its

22  employees and customers, rather than the goodwill and interests of the purchased

23  company.  The California Court of Appeals reversed, holding that the non-solicitation

24

25

26  _____

    [10] Furthermore, Kevin Dresser, a shareholder of LM that MV admits acted principally as a financier of LM, and
27  who was not involved in the operations and who did not become an employee of LM, (Davis ¶ 9), received the
    same payment as Davis in the Purchase Agreement, indicating that any purported "goodwill" in LM was not
    actually considered in the purchase price. (Complaint, Ex. 1, ¶¶ 2.1-2.3).

28

provision was overbroad because it applied to the purchaser's business. The *Strategix* court declined to rewrite the agreement for the purchaser.

The non-solicit covenant here, however, extends well beyond the allowable scope of a covenant under California law in *Strategix*, including:

- No solicitation of any "customer or client or other business opportunities of the Company or *Purchaser*." (¶ 1.02.2)

- No solicitation of any employee of "the Company or *Purchaser*" (¶ 1.02.3)

Although plaintiff does not seek to enforce the non-compete in the TRO hearing, the non-competition covenants reflect the same overbroad language:

- No competition with the "*Purchaser* (including *Purchaser's subsidiaries, successor, or affiliates*" (¶ 1.02.1);

- The covenant area is "anywhere in all the cities, counties, and states within the United States in which *Purchaser*, [LM] or any of their subsidiaries, successor or affiliates do or market business" (¶ 1.02);

The potential impact of enforcing the overbroad covenants is clear. Plaintiff "has more than 10,000 employees that work in more than 120 locations throughout 25 states...." (Complaint ¶ 9). By contrast, LM had five employees, a single contract with a company in the State of Virginia, and gross annual revenue in the range of $400,000 per year with net profits of only $20,000 to 25,000 per year. (Davis ¶ at 8).

MV admits, "[a]t the time of the acquisition and since, MV and its subsidiaries and affiliates provided public transit services <u>broader</u> than just paratransit services, consulting services medical transportation, paratransit brokerage, and paratransit software application service provider business engaged in by Local Motion." (Memo in Support, p. 5, ll. 13-17.) (emphasis in original).

Further, no legal basis supports rewriting the covenant for plaintiffs because "courts will not strike a new bargain for the parties, 'for the purposes of saving an illegal contract.'" *Strategix*, 142 Cal. App. 4th at 1074 (declining to rewrite unenforceable

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

contract).  Plaintiffs certainly could have negotiated for a proper limited and enforceable non-solicit covenant.

### d.    If the Court Blue-Pencils the Agreement, the Non-Solicit and/or Non-Compete Should Apply Only to Customers and Employees of LM.

Assuming the court could blue-pencil the agreement,[11] it only would be enforceable to limit the non-solicit and non-compete covenants as to LM's employees and customers and would not apply to MV's employees and customers.  (See Section II.B.I.c above).

Notably, even assuming Davis solicited Bryan, he <u>was not</u> an employee of LM at the time of the alleged solicitation.  Plaintiffs' Complaint acknowledges this point. (Complaint at ¶ 18). Thus, there would be no violation of the non-solicit provision (as rewritten).

### e.    The Conduct Alleged Does Not Establish a Violation of the Covenant.

Even if the non-solicit covenant was enforceable, plaintiffs' allegations do not support an inference of improper solicitation.  The plaintiffs' sole evidence of solicitation is two e-mails and an alleged statement that Davis negotiated a "package deal" for herself and Christopher Bryan.

In the first e-mail, Davis e-mailed Veolia to extend her appreciation about Davis's and Bryan's future employment with Veolia.  (Declaration of Monson at Exhibit G). The e-mail, however, does not evidence that Davis solicited Bryan and/or induced him to leave MV.  Rather, a former MV employee – not Davis -- identified Bryan (and Davis) as individuals who potentially may have an interest in joining Veolia.  (Davis at ¶ 18). Veolia – not Davis – sought to recruit Bryan.  (Davis ¶¶ 19, 20).  And Veolia – not Davis – negotiated with Bryan and extended Bryan an offer of employment.  (Davis ¶ 20;

---

[11] Because only <u>one</u> year remains on the covenants and the scope of a rewritten covenant would be so narrow (one customer that plaintiffs still have and four employees), it makes little sense to re-write the covenant.

1    Bryan ¶ 7). Davis did not solicit Bryan or induce him to leave MV. (Davis at ¶ 20).

2    Indeed, Bryan made his decision to join Veolia without any influence by Davis, and

3    there is no record evidence to the contrary.

4    The second e-mail shows that Davis provided Bryan's e-mail to Veolia. This e-

5    mail does not evidence an improper solicitation either. It only shows that Davis was

6    asked to provide an e-mail address to Veolia, and she did. (Exhibit H). Veolia learned

7    of Bryan independent of Davis then contacted him, negotiated with him, and hired him.

8    With respect to the alleged "package deal" comment, plaintiffs infer that Davis

9    solicited Bryan for both of them to take employment with Veolia. Davis's and Bryan's

10   offers of employment were not contingent on the other accepting employment with

11   Veolia. Davis denies that she ever said she and Bryan were a package deal. (Davis ¶

12   20).

13   **2.    Davis Has Not Disclosed Any Confidential or Proprietary Information**

14   **of MV; Inevitable Disclosure Is Not a Valid Theory.**

15   In plaintiffs' Complaint, they assert -- *on information and belief* – that Davis has

16   confidential MV information and, accordingly, a temporary restraining order should

17   issue to restrain Davis from violating her non-disclosure obligations under her

18   Employment Agreement. (Complaint ¶¶ 40, 41)

19   **a.    Inevitable Disclosure Theory Is Not Valid**

20   Plaintiffs have no evidence of any violation of the covenants in the Employment

21   Agreement. Yet, plaintiffs seek to restrain Davis from working for Veolia purely on an

22   anticipated disclosure of some unidentified confidential information.

23   To the extent plaintiffs argue that Davis's new position at Veolia necessarily will

24   require her to disclose plaintiffs' confidential and proprietary information, California has

25   expressly rejected the doctrine of "inevitable disclosure." *Whyte v. Schlage Lock Co.,*

26   101 Cal. App. 4th 1443, 1463 (2002) ("Lest there any doubt ... our rejection of the

27   inevitable disclosure doctrine is complete."). *See also Bayer Corp. v. Roche Molecular*

28   *Systems, Inc.,* 72 F. Supp. 2d 1111, 1119-1120 (N.D. Cal. 1999). To the extent the Court

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

1   finds that Virginia law applies,[12] "Virginia does not recognize the inevitable disclosure

2   doctrine." *Government Technology Services, Inc. v. IntelliSys Technology Corp.*, 51 Va.

3   Cir. 55 (Va. Cir. Ct. 1999).

4       In *Whyte*, the court rejected the "inevitable disclosure" doctrine and required a

5   plaintiff to show actual or threatened misappropriation before an injunction could be

6   issued to prevent a former employee from taking a job with a competitor.  *See Whyte*,

7   101 Cal. App. 4th at 1463.  *Whyte*'s requirements are very specific – a factual showing

8   regarding actual or threatened misappropriation *is* a condition for injunctive relief.  *Id.*

9         **b.**    **There is No Evidence of a Violation**

10      Plaintiffs allege that some unidentified Veolia representative said "we have that

11  covered" in response to a customer's (Access Services) statement that a provider of

12  services would need to have its own software.   (Memo in Support at 11, ll. 26-27).  This

13  vague and ambiguous hearsay statement offers no proof that Davis made any improper

14  disclosures.   Such failure to produce any direct or indirect evidence of disclosure

15  requires dismissal.  *See, e.g., Whyte*, 101 Cal. App. 4th at 1463; *Government Technology*

16  *Services,* 51 Va. Cir. at 55.

17      Plaintiffs make the bold and wholly unsupported claim that "no one else in the

18  industry has software with the capabilities that are currently being provided by MV's

19  proprietary software." (Memo in Support, p. 12, ll. 25-26).  Plaintiffs, however, ignore

20  the logical explanation that, Veolia, as the largest private transportation provider in the

21  country, has the ability to "have that covered" on its own.  In fact, Veolia has long had

22  the ability to provide software services, including through Trapeze whom Veolia often

23  uses for software assistance or other similar vendors. (Davis ¶ 24).  Further, plaintiffs

24  acknowledged that Davis had experience in software development before she was even

25

26

27  [12] The Employment Agreement contains a Virginia choice of law provision.  (Complaint, Ex. 3, ¶ 10.1).  However, in arguing that Davis has breached the confidentiality covenants of the Employment Agreement (*see* Memo in Support at p. 18, ll. 4-21), plaintiffs rely solely on California law.

28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

employed with Plaintiffs. (*See* Memo in Support at pp. 5-6). Plaintiffs do not have the market cornered in transportation software services.

Finally, and perhaps most significantly, Veolia withdrew its bid on the proposed request for proposal by Access Services. (Davis ¶ ). This occurred well before Davis or Veolia knew of this lawsuit and, thus, there is no threat that Veolia will take that business.

### C. There is No Showing of Irreparable Harm.

Plaintiffs' argument for irreparable harm is premised on two allegations: (1) solicitation and (2) disclosure of information. The Court should deny the request for a TRO on the ground that plaintiffs fail to make a showing they may suffer irreparable harm.

Even assuming that the Court would find Davis wrongly solicited Bryan to leave MV and join Veolia, this is the sole person that she allegedly solicited and there is no evidence that Davis has solicited or may solicit any other MV employees. Moreover, Veolia withdrew the Access Services project bid and, accordingly, no harm can result. This Court recently denied a motion for a temporary restraining order, finding no irreparable injury resulted where the alleged improper conduct, like here, was moot. *See Gadri v. Still,* No. 2007 WL 601980, * 1 (N.D. Cal., 2007) (denying motion for temporary restraining order where irreparable injury was moot).

Finally, plaintiffs have not shown that monetary damages are inadequate. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1202, 1211 (9th Cir.1980).

### D. The Proposed Form of TRO Is Overbroad

Even if the Court were at all inclined to grant a TRO, the Court should enter a very limited order. Here, plaintiffs' demand for injunctive relief is plainly overbroad. Plaintiffs want to enjoin Davis from:

a. "soliciting any of MV's current or prospective employees";

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

b.  "soliciting any of MV's current or prospective customers";

*See* [Proposed] Order Re Ex Parte Application for Temporary Restraining Order.

As described above, *Strategix* and Section 16601 foreclose any extension of the restrictions to plaintiffs' employees or customers.  If the Court enters a TRO, the scope would cover, at most, non-solicitation of LM's former customer (Caremark) or LM's former employees (Ryan Larsen, Marsha Madrid, Shelby Fisher).

Without any evidence of disclosure or use of proprietary information, the Court should decline to enter a TRO.  *See* Fed. R. Civ. P. 65(d) (every order "shall be specific in terms; shall describe in reasonable detail … the act or acts sought to be restrained.").

## B.    If the Court Allows a Preliminary Injunction Hearing

The plaintiffs further seek a preliminary injunction hearing on the non-compete covenant in the Non-Competition Agreement.  As discussed above, the non-compete covenant is overbroad and unenforceable.

If the Court orders a preliminary injunction hearing, Davis requests a minimum of eight weeks to complete preparation for the hearing.  At least two weeks will be needed to request documents and requests for information.  One week will be needed to prepare for depositions.  Two to three weeks will be needed for depositions given that witnesses are in several different states.  Then another one to two weeks will be needed to draft preliminary injunction pleadings with the discovery information.

### Conclusion

The Court should enter an order to dismiss this matter for improper venue or transfer the matter to the District of Arizona. Alternatively, the Court should deny the request for a temporary restraining order and a preliminary injunction hearing not only because the covenants in this case are overbroad and unenforceable as a matter of law, but also because the alleged conduct simply does not establish any violation of the covenants.

Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
(602) 778-3700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPECTFULLY SUBMITTED this 19th day of November, 2007.

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By: /s/ L. Eric Dowell
    L. Eric Dowell
    Alec Hillbo
    2415 East Camelback Road, Suite 800
    Phoenix, Arizona 85016

    Linda Claxton
    David A. Garcia
    633 West 5th Street, 53rd Floor
    Los Angeles, California 90071

    Attorneys for Defendant Janet Davis

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of November 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alex James Kachmar
Charles L. Post
Dale Curtis Campbell
Weintraub Genshlea Chediak
400 Capitol Mall, 11th Floor
Sacramento, CA 95814
Attorneys for Plaintiff

/s/ Shayna H. Balch
Shayna H. Balch

5343190.1