Dale C. Campbell, State Bar No. 99173
Charles L. Post, State Bar No. 160443
James Kachmar, State Bar No. 216781
**weintraub** genshlea chediak
a law corporation
400 Capitol Mall, 11th Floor
Sacramento, California  95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

Attorneys for Plaintiffs
MV Transportation, Inc. and
MV Public Transportation, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MV TRANSPORTATION, INC., a California corporation; and MV PUBLIC TRANSPORTATION, a California corporation,<br><br>            Plaintiffs,<br><br>    vs.<br><br>JANET DAVIS; and DOES 1 through 20, inclusive,<br><br>            Defendants. | Case No. 3:07-cv-05712-PJH<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER OR DISMISS<br><br>Date:  TBA per Order dated 11.21.07<br>Time:  TBA per Order dated 11.21.07<br><br>The Hon. Phyllis J. Hamilton |

{12700/16315/DCC/0999049.DOC;}

Plaintiffs' Opp. to Defendant's
Motion to Transfer or Dismiss

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 1 |
| | A. | The "Agreement" | 1 |
| | B. | The Exclusive Forum Selection Clause | 2 |
| | C. | The Agreement Provides for Judicial Injunctive Relief Notwithstanding an Overall Agreement to Arbitrate | 3 |
| | D. | The Arbitration Provisions of the Agreement | 4 |
| | | 1. The SPA | 4 |
| | | 2. The Covenant | 4 |
| III. | ARGUMENT | | 6 |
| | A. | The SPA Expressly Incorporates both the Covenant and the Employment Agreement and Therefore the Exclusive Forum Selection Clause in the SPA Controls | 6 |
| | B. | The Mandatory Forum Selection Clause in the SPA Establishes Personal Jurisdiction and Exclusive Venue for This Action in the Northern District of California | 7 |
| | C. | The Exclusive Forum Selection Clause Is Valid | 8 |
| | D. | California Statute and Case Law Establish That the SPA, the Covenant, and the Employment Agreement, Both Attached as Listed Schedules to the SPA, Must Be Read Together | 10 |
| | E. | Davis Attempts to Mislead the Court by Wrongfully Representing the "Forum Selection Clause" in the Employment Agreement | 11 |
| | F. | Even if the Clause in the Employment Agreement Is Interpreted as a Forum Selection Clause Covering Actions Seeking Injunctive Relief, the Motion Must Still Be Denied Because the Clause Is Permissive, Not Mandatory | 12 |
| IV. | CONCLUSION | | 13 |

TABLE OF AUTHORITIES

Page

*Federal Cases*

Burger King Corp. v. Rudzewicz
    471 U.S. 462, 105 S.Ct. 2174 (1985) ................................................................. 7

Carnival Cruise Lines, Inc. v. Shute
    499 U.S. 585 (1991) ........................................................................................... 7

Chan v. Society Expeditions, Inc.
    39 F.3d 1398 (9th Cir. 1994) ........................................................................... 7, 8

Contraves, Inc. v. McDonnell Douglas Corp.
    889 F.Supp. 470 (M.D. Fla. 1995) ..................................................................... 8

Dakota Gasification Co. v. Natural Gas Pipeline Co. of America
    964 F.2d 732 (8th Cir. 1992) ............................................................................ 11

Docksider, Ltd. v. Sea Technology, Ltd.
    875 F.2d 762 (9th Cir. 1989) ........................................................................ 8, 13

Hunt Wesson Foods, Inc. v. Supreme Oil Co.
    817 F.2d 75 (9th Cir. 1987) .............................................................................. 13

In re Lumberman's Mortg. Co.
    712 F.2d 1334 (9th Cir. 1983) .......................................................................... 10

Manetti-Farrow v. Gucci America, Inc.
    858 F.2d 509 (9th Cir. 1988) .......................................................................... 8, 9

Motown Record Corp. v. Wilson
    849 F.2d 1476 (9th Cir. 1988) .......................................................................... 10

M/S Bremen v. Zapata Off-Shore Co.
    407 U.S. 1, 92 S.Ct. 1907 (1972) .................................................... 7, 8-9, 9, 10

Parker v. Bank of America Corp.
    50 F.3d 757 (9th Cir. 1995) .............................................................................. 11

PNS Business Machines, Inc. v. Cannon USA, Inc.
    331 F.3d 804 (11th Cir. 2003) ........................................................................... 9

TAAG Linhaf Aereas Deangola v. TransAmerica Airlines, Inc.
    915 F.2d 1351 (9th Cir. 1990) ........................................................................... 7

*California Statutes*

Civil Code
    § 1642 ................................................................................................................ 10

///

### Miscellaneous

17A American Jurisprudence, Second Edition
    Contracts, § 379 .................................................................................................. 10

1 Witkin, Summary of California Law
    Contracts, § 747 .................................................................................................. 10

Plaintiffs MV Transportation, Inc. and MV Public Transportation, Inc. (collectively, "MV") submit the following opposition to defendant Janet Davis's ("Davis") motion to transfer or dismiss.

## I. INTRODUCTION

Davis's motion to transfer or dismiss for lack of venue is based upon a false impression created by Davis's attempt to recast the Share Purchase Agreement, the Non-Competition Agreement, and the Employment Agreement as "stand-alone contracts." They are not. The Share Purchase Agreement incorporates the other two agreements to become an integral part of the one comprehensive "Agreement," which is a defined term meaning the Share Purchase Agreement and all other agreements attached thereto as Schedules – including the Non-Competition Agreement and the Employment Agreement. The Agreement is governed by a comprehensive dispute resolution and venue provisions designating the Northern District of California as the exclusive jurisdiction for any judicial action for injunctive relief.

The Agreement has a cohesive consistent structure that provides for obtaining judicial injunctive relief in the Northern District of California, arbitration of disputes other than claims for judicial injunctive relief before the AAA located in San Francisco, and the entry of the arbitration award in any court of competent jurisdiction. The only reference to a locale other than the Northern District of California or AAA in San Francisco is a passing reference made only in the Employment Agreement in which the parties agree that Tucson, Arizona, is one of several possible courts of competent jurisdiction in which an arbitration award under the Employment Agreement may be filed. Thus, Davis's motion to dismiss or transfer must be denied.

## II. STATEMENT OF FACTS

A.   The "Agreement"

On or about December 5, 2003, MV, Local Motion, and Local Motion's four (4) shareholders entered into a Share Purchase Agreement ("SPA") whereby MV purchased the control and goodwill of Local Motion by acquiring eighty percent (80%) of the issued and outstanding shares of Local Motion. The document is a voluminous one of more that

300 pages in length. A copy of the bound, integrated document is attached as Exhibit "A" to the declaration of Charles L. Post dated December 5, 2007 filed herewith.[1]

Section 1.1(a) of the SPA defines the term "Agreement" to mean "this Share Purchase Agreement, <u>including</u> the Schedules listed in Section 1.3, and all amendments thereto and restatements thereof." Emphasis added.

Section 1.3 of the SPA lists 34 schedules, two of which are the Non-Competition Agreement (Schedule 4(j)) and the Employment Agreement (Schedule 4(k)). Section 1.3 of the SPA further provides that the "schedules are incorporated into this Agreement as if they were set out in full herein, and shall be deemed to be an integral part of this Agreement." Accordingly, the Non-Competition Agreement and the Employment Agreement are defined as integrated integral parts of the SPA to form the Agreement and, as such, are subject to the terms of the SPA. The SPA also contains an integration clause, section 8.6, which states: "This Agreement, including the Schedules, hereto, together with the agreements and other documents to be delivered pursuant hereto, constitute the entire agreement to the Parties . . . ." Davis's argument that the SPA, the Non-Competition Agreement, and the Employment Agreement are "stand-alone" agreements is simply wrong.

B. The Exclusive Forum Selection Clause

The SPA contains an exclusive forum selection clause which applies to the entire Agreement. Section 8.8 of the SPA states:

> Subject to the arbitration provisions herein, the Sellers, Purchaser and the Company agree that exclusive jurisdiction in any action, suit, or proceeding related to any dispute arising under <u>this Agreement and the other agreements relating to this Agreement</u> ... <u>shall be in any United States District Court for the District for the Northern District of</u>

---

[1] Davis's counsel incorrectly represented to the Court at the hearing on MV's application for a temporary restraining order that MV paid only $50,000 under the SPA. The consideration paid by MV to acquire Local Motion included:
    (a)    the sum of $50,000 paid to the four shareholders;
    (b)    Davis's and the other three individual sellers' agreement to execute a Non-Competition Agreement as required by section 4.1(j) of the SPA to protect the goodwill being sold to MV under the Agreement. MV paid an additional aggregate sum of $100,000 under the SPA as additional consideration for the sellers' sale of goodwill and execution of the Non-Competition Agreement.
    (c)    an additional sum equal to the appraised value of real estate located in Elk Horn, Iowa; and
    (d)    MV's hiring Davis, Moore, and Larsen as employees of Local Motion upon completion of the merger. Monson Decl., ¶ 5, and Exh. A, p. 12 at ¶¶ 2.1 and 2.2.

California (or, notwithstanding such <u>consent to jurisdiction</u>, if jurisdiction does not lie in said federal court [i.e., if federal subject matter jurisdiction should be lacking], then the parties consent to jurisdiction of any state court located <u>within such Northern District of California</u>).

Emphasis added.

The SPA thus includes an exclusive jurisdiction selection clause that the parties expressly agreed applied to the entire Agreement, the defined term which includes the schedules attached and incorporated into the SPA, including the Non-Competition Agreement and the Employment Agreement. Section 8.8 of the SPA leaves no doubt that the exclusive venue clause applies to the entire Agreement, including the Non-Competition Agreement and the Employment Agreement, by providing that the agreed upon exclusive jurisdiction of the Northern District of California applies to "any dispute arising under this Agreement and the other agreements relating to this Agreement . . . ."

C.  **The Agreement Provides for Judicial Injunctive Relief Notwithstanding an Overall Agreement to Arbitrate.**

Each of the three parts of the Agreement relevant to this lawsuit expressly provides that a party may seek injunctive relief directly with the Court despite the existence of arbitration provisions. For example, the SPA at sections 7.2 and 8.8 contemplates the availability of equitable remedies and that the parties agreed:

> Subject to the arbitration provisions herein, the Sellers, Purchaser and the Company agree that exclusive jurisdiction in the action, suit or proceeding related to any dispute arising under this Agreement and the other agreements relating to this Agreement . . . shall be in any United States District Court for the district of the Northern District of California . . . .

Similarly, the Non-Competition Agreement[2] provides, in Article II, that the sellers, including Davis, acknowledge that MV:

> [w]ill suffer irreparable damage for any breach, that any remedy of law for any such breach of this Covenant would be inadequate, and that the Purchaser [MV] and the Company [Local Motion] will be entitled to both (a) preliminary or permanent injunction to prevent the continuation of such breach, and (b) money damages insofar as they can be determined.

///

---

[2] The Non-Competition Agreement defines itself as the "Covenant," which will be the term used throughout the balance of this pleading.

Lastly, the Employment Agreement, under Article IX entitled "Arbitration," similarly provides that the arbitration procedures will be the sole and exclusive procedures for resolving disputes under the Employment Agreement, "provided, however, that a party may seek a preliminary injunction or other provisional <u>judicial</u> relief if in its judgment such action is necessary to avoid irreparable damage or to preserve the status quo." Emphasis added.

### D. The Arbitration Provisions of the Agreement

The exclusive venue selection provision of the Agreement designating the Northern District of California as the proper venue is consistent with the arbitration provisions of the Agreement.

#### 1. The SPA

Section 8.3 of the SPA requires that any dispute under the Agreement, with the exception of the right to seek an injunction or other provisional judicial relief, shall be arbitrated in San Francisco.[3] The arbitration provision included in the SPA provides, in relevant part:

> The arbitration shall be conducted at the [American Arbitration] Association's regional office located in the state [sic] and county of San Francisco. If there is more than one dispute, all disputes shall, to the extent practicable, be combined in one arbitration conducted by one arbitrator. The arbitration shall be conducted by a single arbitrator who is agreed upon by the parties to the dispute or, in the absence of such agreement, selected by the Association and who is either a member of a national accounting firm familiar with businesses engaged in bus transportation or a retired judge. Judgment upon the arbitrator's award may be entered and enforced in any court of competent jurisdiction.

#### 2. The Covenant

The Covenant does not duplicate an arbitration provision as the arbitration provision contained in the SPA applies to the entire Agreement, which includes the Covenant.

The Covenant specifically references the SPA and makes clear that the Covenant is part of the SPA. The Covenant, in its initial introductory paragraph, recites that it "is given in connection with the Share Purchase Agreement . . . ." The Recitals in the Covenant further evidence the integrated relationship of the Covenant and the SPA. These Recitals include:

---

[3] The right to seek injunctive or other equitable relief directly in court is preserved, notwithstanding the arbitration provision. See section II.B, above.

> **WHEREAS,** the parties have entered into a Share Purchase Agreement, dated the Effective Date (the "Agreement"). Pursuant to the Agreement, Purchaser shall purchase the 80% of Stock from the Shareholders.
>
> **WHEREAS,** in accordance with the terms of the Agreement, Purchaser and Company desire to obtain from Shareholders, and Shareholders are willing to grant to Purchaser and Company a covenant not to compete.
>
> All capitalized terms under this Covenant shall have the same meanings ascribed to them in the Agreement unless otherwise specifically defined herein.
>
> Article I.  Covenant Agreement
>
> For and in consideration of the above recitals, <u>for consideration provided to Shareholders under the Agreement</u>, and for other good and valuable consideration, this Covenant is given by Shareholders and accepted by Purchaser and Company on the terms and conditions stated herein.

*See* Non-Competition Agreement, p. 1.

The Covenant makes it clear that it is given in connection with the SPA. The Covenant, by specifically adopting the definitions contained in the SPA, makes it clear that the Agreement, as defined in the SPA, includes the SPA, the Covenant, and the Employment Agreement. Davis's counsel has argued that the Covenant contains an integration clause at section 3.05 that somehow trumps the integration clause contained in the SPA which applies to the entire Agreement. To make this argument, Davis's counsel ignores the defined meaning of the term "Agreement" and ignores the fact that section 3.05 of the Covenant only represents that it is the "entire agreement between the parties dealing with the specific subject matter treated [in the Covenant] . . . ." It does not purport to supersede or override the integration clause contained in the Agreement addressing items not otherwise specifically treated in the Covenant, such as the exclusive jurisdiction of the Northern District of California in which to seek judicial injunctive relief.

The Employment Agreement at section 9 does contain a specialized arbitration provision. The difference is that the arbitration provision in the Employment Agreement calls for the use of the Employment Dispute Resolution Rules of the American Arbitration Association rather than the Commercial Arbitration Rules of the American Arbitration Association, the rules specified in the Agreement. In all other material respects, the arbitration provision in the Employment Agreement is consistent with the arbitration provision for the Agreement that the

arbitration would be before the American Arbitration Association, held in San Francisco, and that "[j]udgment upon any verdict in arbitration may be entered in any court of competent jurisdiction."

The sentence immediately following the sentence in the Employment Agreement that "Judgment upon any verdict in arbitration may be entered in any court of competent jurisdiction" reads: "The parties hereby consent to the jurisdiction of, and proper venue in, the federal and state courts located in Tucson, Arizona." This sentence does not dictate Tucson as the only jurisdiction in which to enter the arbitration award; rather, it is an agreement that Tucson is one of perhaps several courts of "competent jurisdiction" in which the arbitration award can be entered. The language of this clause certainly differs in material respects from the mandatory language for the Agreement that the "exclusive jurisdiction in any action, suit, or proceeding related to any dispute arising under this Agreement or the other agreements relating to this Agreement . . . shall be in the United States District Court for the Northern District of California . . . ." SPA at section 8.8. The Agreement's umbrella exclusive venue provision controls where any action to obtain injunctive judicial relief must be filed.

All the provisions of the Agreement can and must be read so as to give effect to one another. The Agreement requires any request for injunctive relief to be heard in this court, disputes over non injunctive relief to be resolved by binding arbitration in San Francisco, and for entry of any arbitration award to occur in "any court of competent jurisdiction," with the courts in Tucson, Arizona, being one such court.

### III. ARGUMENT

**A.    The SPA Expressly Incorporates both the Covenant and the Employment Agreement and Therefore the Exclusive Forum Selection Clause in the SPA Controls.**

Davis's attempt to construe the Covenant and the Employment Agreement as "two completely integrated, stand-alone contracts" is without merit. Both are part of the larger Agreement. Section 1.1(a) of the SPA defines the term "Agreement" to mean **"this Share Purchase Agreement, including the Schedules listed in Section 1.3,** and all amendments thereto and restatements thereof." Section 1.3 lists 34 schedules and states that the "schedules

are incorporated into this Agreement as if they were set out in full herein, and shall be deemed to be an integral part of this Agreement." The schedules listed in section 1.3 include the Non-Competition Agreement (Schedule 4(j)) and the Employment Agreement (Schedule 4(k)). Therefore, the Covenant and the Employment Agreement are both expressly incorporated in, and are expressly subject to the terms of, the SPA.

Among the terms of the SPA is a mandatory forum selection clause establishing exclusive jurisdiction for all disputes in the Northern District of California. Section 8.8 of the SPA states:

> Subject to the arbitration provisions herein, the Sellers, Purchaser and the Company agree that <u>exclusive jurisdiction in any action, suit, or proceeding related to any dispute arising under this Agreement and the other agreements relating to this Agreement ... shall be in any United States District Court for the District for the Northern District of California</u> (or, notwithstanding such consent to jurisdiction, if jurisdiction does not lie in said federal court [i.e., if federal subject matter jurisdiction should be lacking], then the parties consent to jurisdiction of any state court located <u>within such Northern District of California</u>).

SPA, section 8.8 (emphasis added). This forum selection clause controls the entire Agreement.

B.   **The Mandatory Forum Selection Clause in the SPA Establishes Personal Jurisdiction and Exclusive Venue for This Action in the Northern District of California.**

Consent is one of the oldest traditional bases for jurisdiction. Challenges to personal jurisdiction may be waived by either express or implied consent. <u>Chan v. Society Expeditions, Inc.</u>, 39 F.3d 1398, 1406 (9th Cir. 1994). Parties may by contract designate a forum in which any litigation is to take place. A common method by which parties to a contract consent to jurisdiction is through the inclusion of a forum selection clause. <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 589 (1991); <u>TAAG Linhaf Aereas Deangola v. TransAmerica Airlines, Inc.</u>, 915 F.2d 1351, 1353 (9th Cir. 1990). "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, n. 14 (1985) (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15; 92 S.Ct. 1907, 1916 (1972)).

///

The Ninth Circuit has held that a forum selection clause alone is sufficient to confer personal jurisdiction. Chan, supra, 39 F.3d at 1407. In addition to jurisdiction, a valid forum selection clause, especially one that uses mandatory language, establishes venue. Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir. 1989). In fact, mandatory forum selection clauses are enforced even in a case where the forum designated by the parties has no relation to either the parties or the dispute. Contraves, Inc. v. McDonnell Douglas Corp., 889 F.Supp. 470-74 (M.D. Fla. 1995) (enforcing forum selection clause mandating venue in New York between Pennsylvania and Missouri parties in a dispute over a contract to be performed in Florida, Missouri, and China). The Agreement contains a mandatory forum selection clause which controls this matter and mandates venue in the Northern District of California. Davis's claims that this clause does not control the entire Agreement are, at best, without merit.

Here, section 8.8 of the SPA is unambiguous. The purchasers and MV agreed to grant "exclusive jurisdiction in any action, suit or proceeding relating to any dispute arising under this Agreement and the other Agreements relating to this Agreement shall be in any United States District Court for the Northern District of California."[4] There can be no legitimate dispute as the meaning of that language. Any dispute under the "Agreement" which includes all of the schedules including schedules 4.1(j), the Covenant, and 4.1(k), the Employment Agreement, and any other agreement related to the Agreement shall be heard in the United States District Court for the Northern District. SPA, section 8.8.

C.   The Exclusive Forum Selection Clause Is Valid.

In the Ninth Circuit, forum selection clauses are governed by federal law. Manetti-Farrow v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, forum selection clauses are presumed valid. "Enforcement will be ordered unless it clearly would be "unreasonable and unjust or the clause was invalid for such reasons as fraud or overreaching."

---

[4] Indeed, the Agreement provides that "[n]otwithstanding such consent to jurisdiction, if jurisdiction does not lie in said federal court (i.e., a federal subject matter jurisdiction should be lacking), then parties consent to jurisdiction of any state court located within such Northern District of California."

1  M/S Bremen, supra, 407 U.S. at 15; Manetti-Farrow, Inc., supra, 858 F.2d at 512. The
2  presumption created by a parties consent to a forum selection clause will be trumped only by:
3  (1) fraud, undue influence or overreaching; (2) where enforcement of the clause would be so
4  fundamentally unfair and seriously inconvenient to one party so it is effectively deprived its day
5  in court; and (3) enforcement would contravene a strong public policy of the forum in which
6  the suit is brought. M/S Bremen, supra, 407 U.S. at 15. None of those exceptions would
7  apply here. The SPA was a bargained for Agreement executed by the parties more than four
8  years ago. The SPA contains a provision that the Agreement was drafted by lawyers and
9  reviewed by counsel for both sides. SPA, Article IV, Conditions Precedent, § 4.1(m) and
10 § 4.2(c). Nor has Davis offered any evidence or argument in their moving papers that the
11 provision was procured by fraud or undue influence. Indeed, Davis seeks to deny the
12 effectiveness of the provision but does not argue that she did not bargain for and agree to the
13 provision. See Motion to Dismiss or Transfer for Improper Venue at 3-4.
14     Nothing fundamentally unfair can be found in this provision. Not only is this the forum
15 the parties to the Agreement bargained for, Davis has offered nothing that shows that
16 enforcement of the forum selection clause will constitute an effective denial of her opportunity
17 to be heard. She has not met the "heavy burden of proof" required. M/S Bremen, supra,
18 407 U.S. at 19. Financial hardship alone is insufficient. PNS Business Machines, Inc. v.
19 Cannon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003). Here, Davis has already
20 demonstrated her ability to appear and argue in this Court. She was represented by counsel at
21 the hearing on MV's application for a temporary restraining order. Similarly, any arbitration is
22 to be conducted in San Francisco, California, further evidence that defending in San Francisco
23 – whether by arbitration or by injunction – was the agreed upon locale. Moreover, any
24 financial consequence of litigating and arbitrating in San Francisco is being borne by her
25 current employer, Veolia. See Declaration of Jon Monson filed with Plaintiffs' Ex Parte
26 Application for Temporary Restraining Order, Exhibit I, p. 4 at ¶ 3(g). Nor can there be any
27 argument that the enforcement of the forum selection clause would "contravene a strong
28 ///

public policy of the forum in which the suit is brought." M/S Bremman, supra, 407 U.S. at 15. Davis has made no showing in this regard. In any case, it is what Davis agreed to.[5]

As explained above, the SPA includes a mandatory forum selection clause requiring venue in the Northern District of California. The parties expressly made this clause applicable to the attached and incorporated schedules, including the Covenant and the Employment Agreement. Moreover, the recitals to the Covenant, Schedule 4(j), include a recital that the Covenant is being entered into in accordance with the terms of the SPA. Therefore, the Covenant and the Employment Agreement, which are expressly included by definition in the term "Agreement," are subject to the exclusive forum selection clause of section 8.8 of the SPA.

D.  California Statute and Case Law Establish That the SPA, the Covenant, and the Employment Agreement, Both Attached as Listed Schedules to the SPA, Must Be Read Together.

Even if the Agreement had not specifically incorporated the Employment Agreement and Covenant, California statute and case law require that the entire Agreement, including the SPA, the Employment Agreement and the Covenant, must be read together. It is well settled in California that instruments that are part of the same transaction and that relate to the same subject matter are read and construed together as one contract. 1 Witkin, Summary of California Law, 10th ed., Contracts, § 747 (2005); 17A Am.Jur.2d Contracts § 379. California has codified this fundamental principal of contract interpretation in California Civil Code section 1642. Section 1642 provides:

> Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.

Further, the Ninth Circuit has implemented the requirements of §1642 when applying California law. See Motown Record Corp. v. Wilson, 849 F.2d 1476 (9th Cir. 1988); Prestin v. Mobil Oil Corp., 741 F.2d 268, 272 (9th Cir. 1984); In re Lumberman's Mortg. Co., 712 F.2d 1334, 1336 (9th Cir. 1983).

---

[5] Section 8.8 constitutes Davis's agreement to have all disputes heard in the United States District Court for the Northern District or, absent federal subject matter jurisdiction, in any state court within that district. SPA, section 8.8.

Courts have been consistent in applying this well-settled rule. "Documents that relate to the same subject matter and that were executed as part of the same transaction are construed as part of the same instrument." Parker v. Bank of America Corp., 50 F.3d 757, 763 (9th Cir. 1995). This rule of interpretation applies even though the parties executing the contracts differ as long as the several contracts were known to all the parties and were delivered at the same time to accomplish the agreed purpose. Dakota Gasification Co. v. Natural Gas Pipeline Co. of America, 964 F.2d 732, 735 (8th Cir. 1992).

In this case, the SPA, the Covenant, and the Employment Agreement, executed concurrently, are all based on the sale of Local Motion to MV. The SPA defines the term "Agreement" to include both the Covenant and the Employment Agreement. Even though not required under case law, the SPA, the Covenant, and the Employment Agreement were all executed by the same parties – MV and Davis. The SPA specifically refers to the other agreements, and the Covenant specifically refers to the SPA. Therefore, under Civil Code Section 1642 and under common law, the Covenant and the Employment Agreement are both incorporated in, and subject to the terms of, the SPA. Accordingly, the forum selection clause of the SPA controls this dispute and requires venue in the Northern District of California.

E.  Davis Attempts to Mislead the Court by Wrongfully Representing the "Forum Selection Clause" in the Employment Agreement.

Davis wrongfully represents the Employment Agreement as containing a forum selection clause applicable to a party seeking injunctive relief against another party. The Employment Agreement contains no such clause. It does not need any such clause, as the SPA already mandates the Northern District of California as the exclusive jurisdiction in the event of any dispute arising out of the Employment Agreement.

What the Employment Agreement does contain is a clause requiring that any dispute, other than for injunctive or other provisional judicial relief, be subject to binding arbitration. This is completely consistent with the exclusive forum selection clause of section 8.8 of the SPA, which begins: "Subject to the arbitration provisions herein, . . . ." In addition, and also completely consistent with section 8.8 of the SPA, any such arbitration under the Employment

1 Agreement must be conducted in San Francisco, California, home of the Northern District of
2 California.
3     Davis has taken one sentence from a lengthy arbitration provision, quoted it completely
4 out of context, and tried to make it appear to be something it is not – a forum selection clause
5 for actions seeking injunctive relief. The sentence Davis quotes follows a recitation of the
6 power and duties of the arbitrator which detail how the arbitration will be conducted. The
7 Employment Agreement then states:

> Judgment upon any verdict in arbitration may be entered in any court of competent jurisdiction. The parties hereby consent to the jurisdiction of, and proper venue in, the federal and state courts located in Tucson, Arizona.

10 Thus, the parties consented to have any *"verdict in arbitration"* entered in any court of
11 competent jurisdiction, and then agreed that Tucson, Arizona, was one such jurisdiction. The
12 reference to Tucson, Arizona, has nothing to do with, and does not mandate, where a
13 preliminary injunction motion must be brought. Moreover, and contrary to Davis's attempts to
14 mislead the court, the section does not <u>restrict</u> jurisdiction to Tucson, Arizona, it merely allows
15 for it. The sentence immediately preceding Davis's quote, which she omitted, specifically states
16 that the verdict may be entered in *any court of competent jurisdiction*. Nowhere in this section
17 of the Employment Agreement, or any other section of the Employment Agreement for that
18 matter, is there any mention of jurisdiction or venue for an action seeking injunctive relief. It
19 does not need to because the SPA, of which the Employment Agreement and the Non-
20 Competition Agreements are expressly made parts, already contains an exclusive jurisdiction
21 forum selection clause.

22 F.     **Even if the Clause in the Employment Agreement Is Interpreted as a Forum Selection Clause Covering Actions Seeking Injunctive Relief, the Motion Must Still Be Denied Because the Clause Is Permissive, Not Mandatory.**

24     The motion to dismiss or transfer must be denied even if the clause Davis cites could
25 somehow be read to be a forum selection clause covering claims for injunctive relief. The
26 clause Davis cites is at best a permissive forum selection clause that consents to jurisdiction in
27 Tucson, Arizona, relative to the Employment Agreement, but does not mandate jurisdiction or
28 venue there. Courts routinely hold that such clauses, while sufficient to confer jurisdiction in

the court specified, may not be the basis for dismissing a suit brought in another court which has jurisdiction. Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987). Only where the clause specifies that a particular court is the exclusive court in which an action may be brought will a court dismiss the complaint brought elsewhere. Id., at 77-8; see also Docksider, Ltd. supra, 875 F.2d at 764 ("This mandatory language makes clear that venue, the place of the suit, lies exclusively in the designated county.").

In fact, section 8.8 of the SPA contains just such an exclusive jurisdiction forum selection clause. In that section, the parties "agree that **exclusive jurisdiction in any action, suit, or proceeding related to any dispute arising under this Agreement . . . shall be in any United States District Court for the District for the Northern District of California . . . .**" Obviously, the parties knew the difference between exclusive and permissive forum selection clauses when the Agreement was drafted, and intended exactly what they said. Venue for any action, including injunctive relief, was exclusive to the Northern District of California. Any arbitration would be conducted in San Francisco, California, home of the Northern District. The verdict from that arbitration, however, could be entered in any court of competent jurisdiction, and the parties expressly agreed that a court in Tucson, Arizona, could be one such court.

## IV. CONCLUSION

Based on the foregoing, MV respectfully requests that Davis's motion to dismiss/transfer be denied.

Dated: December 5, 2007

Respectfully submitted,

WEINTRAUB GENSHLEA CHEDIAK
Law Corporation

By: /s/
Charles L. Post
State Bar No. 160443

Attorneys for Plaintiffs
MV Transportation, Inc. and
MV Public Transportation, Inc.